**IN THE COURT OF APPEALS OF IOWA**

No. 20-0984
Filed May 26, 2021

**IN THE INTEREST OF G.D.,**
**Minor Child,**

**R.P., Mother,**
        Petitioner-Appellee,

**J.D., Father,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District

Associate Judge.


        A father appeals from the termination of his parental rights under Iowa Code

chapter 600A (2019).  **AFFIRMED.**


        Susan R. Stockdale, Colo, for appellant father.

        Cynthia A. Bahls, Van Meter, for appellee mother.

        Lora L. McCollom of McCollom Law Firm, PLLC, West Des Moines,

guardian ad litem for minor child.


        Considered by Bower, C.J., Doyle, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**DOYLE, Judge.**

A father appeals the termination of his parental rights to his child under Iowa Code section 600A.8(3)(b) (2019). He challenges the sufficiency of the evidence supporting the statutory ground for termination. He also asserts the juvenile court erred in ordering him to pay one-half the guardian ad litem fees. Clear and convincing evidence shows the father abandoned the child and that termination of his parental rights is in the best interests of the child. The court did not abuse its discretion in ordering the father to share equally in payment of the guardian ad litem's fees. We affirm.

## I. Background Facts and Proceedings.

The child was born in 2010. The parents were never married and separated when the child was about five months old. In 2014, the district court entered a chapter 252C judicial support order ordering the father to pay monthly child support. In 2015, the district court entered an order establishing paternity, custody and support. The decree awarded the parents joint legal custody of the child. The mother was awarded physical care with visitation to the father. The father paid child support up until August 2018 and then stopped making payments.

In April 2017, after the father assaulted the mother, the district court entered a protective order by consent agreement restraining the father from committing further acts of abuse or threats of abuse and restraining him from any contact with the mother. The order ended the father's Wednesday overnight visitation and gave him supervised visitation time on alternating weekends. After the father threatened to kill the mother and sent inappropriate texts to the child, in October 2017, the court modified the protective order to provide that the father have no contact or

visitation with the child. The order was extended through April 2019, and extended again through April 2020.

In April 2019, the mother petitioned to terminate the father's parental rights for abandonment under section 600A.8(4) alleging he failed to pay child support without good cause, and under section 600A.8(3)(b)(2) alleging the father's failure to maintain regular communication with the child. The mother also asked the court to appoint a guardian ad litem to represent the best interests of the child. A guardian ad litem was appointed, and the mother's petition was set for hearing.

Following a hearing, the juvenile court denied the petition. The court reasoned:

> The [mother] herein has not shown by clear and convincing evidence that there was any level of deliberateness in the father's failure to pay the ordered child support. The court was presented with many issues regarding the [father]'s rather erratic and unstable behavior, and does not doubt the court would give serious weight to these issues when considering the best interests of the child. The court, however, cannot arrive at the question until the court can first make a finding of the [father]'s failure to provide support without just cause, which the court cannot do.

The mother and the guardian ad litem moved to reconsider, enlarge, or amend under Iowa Rule of Civil Procedure 1.904(2). After another hearing, the court affirmed its ruling denying termination under section 600A.8(4)—failure to pay support without good cause. It affirmed its prior finding that

> the [father] has failed to demonstrate continued interest in the child, to communicate, visit, or demonstrate a place of importance for the child in [his] life, by his failing to visit the child on at least a monthly basis, and was not prevented from doing so by the [mother]. He has failed to maintain regular and appropriate communication with the child or the mother. Any impediment to his exercising visitation with the child have been through his own actions.

The court reversed its prior finding that "the [mother]'s failure to prove by clear and convincing evidence that [the father] has failed to pay without just cause is a required element, in the face of other proof of abandonment." The court then found that termination of the father's parental rights was in the best interests of the child. The court granted the mother's petition and terminated the father's parental rights on the grounds of abandonment under section 600A.8(3)(a).[1] The court also ordered the guardian ad litem fees be shared equally by the mother and the father. The father appeals.

## II. Standard of Review

Appellate review of termination proceedings under chapter 600A is de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). If one of the grounds for termination is established by clear and convincing evidence, the termination will be upheld. *In re B.L.A.*, 357 N.W.2d 20, 22 (Iowa 1984). Although they do not bind us, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses. Iowa R. App. P. 6.904(3)(g); *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa Ct. App. 1998). The best interests of the child are paramount. Iowa Code § 600A.1(1); Iowa R. App. P. 6.904(3)(o); *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

---

[1] This is a typo. It is clear from the court's ruling that it meant section 600A.8(3)(b). Section 600A.8(3)(a) is not applicable here—it applies to children less than six months old at the time of the termination hearing. The body of the ruling refers to section 600A.8(3)(b).

### III.    Analysis.

Private termination actions under chapter 600A involve a two-step process. *In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018); *see* Iowa Code §§ 600A.1, .8.  "In the first step, the petitioner seeking termination must first show by clear and convincing evidence a threshold event has occurred that opens the door for potential termination of parental rights."  *Q.G.*, 911 N.W.2d at 770.  "Once that threshold showing has been made, the petitioner must next show, by clear and convincing evidence, termination of parental rights is in the best interest of the child." *Id.*

### A. Abandonment.

The threshold event here is the father's abandonment of the child.  The juvenile court terminated the father's parental rights on the grounds of abandonment under section 600A.8(3)(b).  Section 600A.2(20) defines abandonment of a minor child as "rejecting the duties imposed by the parent-child relationship . . . , which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child."  Section 600A.8(3)(b), which concerns children who are six months of age or older at the time of the termination hearing, provides the following:

> [A] parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, *and* as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

(2) Regular communications with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

(Emphasis added.)

To terminate parental rights for abandonment under section 600A.8(3)(b), the petitioning party must show by clear and convincing evidence the parent for whom termination is sought has failed to maintain "substantial and continuous or repeated contact with the child." Substantial and continuous or repeated contact with the child is shown by: (1) financially contributing to the support of the child in a reasonable amount according to the parent's means ("cash"), and (2) maintaining sufficient contact with the child as defined in section 600A.8(3)(b)(1)-(3) ("contact"). For a parent to avoid being deemed to have abandoned the child, the parent must meet *both* the cash and contact components of the statute. So a petitioner need only prove by clear and convincing evidence that the parent failed to meet one of the two components, cash or contact, to establish the parent abandoned the child. Put another way, even if the parent has contributed toward support of the child in a reasonable amount under section 600A.8(3)(b), if the parent failed to maintain contact with the child as shown under section 600A.8(3)(b)(1)-(3), the parent may be deemed to have abandoned the child. And vice versa.

In our analysis we first look at the cash component. *See In re S.A.,* No. 17-0859, 2018 WL 1182889, at *2 (Iowa Ct. App. Mar. 7, 2018) (noting "the threshold element of 'substantial and continuous or repeated contact' is economic

contributions" (quoting *In re K.W.,* No. 14-2115, 2015 WL 6508910, at *3 (Iowa Ct. App. Oct. 28, 2015))). The father argues that he has not abandoned his child because he paid child support from the year 2014 through part of 2018, with one payment in 2019. He made consistent payments when he was employed and made payments through his unemployment benefits and tax refund. He contends that making payments is inconsistent with abandoning his child. At the time of the August 2019 termination hearing, the father owed some $7400 in back child support. The juvenile court did not address the cash component of section 600A.8(3)(b) in its initial ruling denying the petition. In its ruling on the motion to reconsider, the court mentioned the cash component. Citing *In re G.A.*, 826 N.W.2d 125 (Iowa Ct. App. 2012), the court concluded the cash component need not be proved if "abandonment can be found by other behaviors in spite of there being financial support." In *G.A.*, the juvenile court found, "Even if the father is deemed to have substantially paid the appropriate amount of support for [G.A.], he has completely failed in his obligations to maintain substantial and continuous or repeated contact with [G.A.]." 826 N.W.2d at 127. Without discussing the cash component, we affirmed the juvenile court's termination of the father's parental rights. *Id.* at 131. Here, the juvenile court made no finding on the cash component but terminated the father's rights on the contact component. So we turn to the contact component.

By the August 2019 termination hearing, the father had no contact with the child for nearly two years, except for a five or ten-minute visit on Father's Day 2018. That visit ended badly when the father "[s]tarted throwing a fit, got mad, got angry, [and] left." The father has not seen the child since. The mother maintains she did

not prevent the father from visiting the child. In response, the father argues that he "was having regular visits until his anger-control issues led to the entry of a No Contact order." His supervised visits with the child became "spotty and then essentially nonexistent. This could be consistent with a finding that the Father intended to abandon G.D. and, in fact, did so." But he asks us to review the text messages he sent to the mother and the child showing "that he very much wanted to have contact with his child but was being stymied by the Mother." We have reviewed the text messages. They are riddled with vulgarity, expletives, threats, mean and hurtful things, and matters inappropriate for a seven-year-old child. One may tease out from these messages that the father wanted contact with the child, but intent is not enough. A parent's subjective intent, "whether expressed or otherwise, unsupported by evidence of acts specified in paragraphs 'a' or 'b' manifesting such intent, does not preclude a determination that the parent has abandoned the child." Iowa Code § 600A.8(3)(c).

The juvenile court found the father "failed to demonstrate continued interest in the child, to communicate, visit, or demonstrate a place of importance for the child in life, by thus failing to visit the child on at least a monthly basis, and was not prevented from doing so by the [mother]." And he failed to maintain regular and appropriate communication with the child and "any impediment to maintain regular and appropriate communication with the child have been through his own actions." We agree. "The father must take personal responsibility for his own wrongful and criminal acts, and cannot use such acts as a justification for his lack of relationship with the child." *G.A.*, 826 N.W.2d at 129; *see also In re D.L.R.*, 454 N.W.2d 838, 842 (Iowa 1990). The father did nothing to seek modification of the protective order

to reassert visitation rights.  The mother showed by clear and convincing evidence that the father abandoned the child under the contact component of section 600A.8(3)(b).

## B.  Best Interest of the Child.

Since the mother made the threshold showing of abandonment, we must next decide whether terminating the father's rights is in the child's best interests.

> Iowa Code section 600A.1 provides a lengthy description regarding application of the concept of "best interest of the child" in termination proceedings.  The provision states the best interest of the child "shall be the paramount consideration" in interpreting the chapter.  Yet, the section further provides the interests of the parents of the child "shall be given due consideration."
>
> The best interest of the child requires each parent "affirmatively assume the duties encompassed by the role of being a parent."  Among other things, the court is directed to consider "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life."
>
> In addition to applying the language of Iowa Code section 600A.1, we may borrow the analytical framework described in Iowa Code section 232.116(2) and (3) to flesh out the best-interest-of-the-child test.  We consider the child's "physical, mental, and emotional condition and needs" and the "closeness of the parent-child relationship."

*Q.G.*, 911 N.W.2d at 771 (internal citations omitted).  The juvenile court found termination of the father's rights was in the child's best interests because of the father's "own instability, criminal and dangerous behavior, coupled with the child's mental health issues."  The father does not challenge this finding.  In any event, the record fully supports the district court's best-interests finding.

## C. Guardian Ad Litem Fees.

The juvenile court amended its initial order "to provide that the fees of the Guardian Ad Litem of $1475.00 shall be shared equally by [the mother] and [the father]."[2]  The court ordered:

> [The guardian ad litem] shall continue to represent the child as his Guardian ad Litem and attorney until such time as this Court or any other Court shall direct.  Her fees to date shall be shared equally by Petitioner and Respondent.  Her fees thereafter, if any, shall be paid by [the mother].

The father argues that he should not be saddled with payment of one-half of those fees.  He suggests the guardian ad litem's fees be handled like attorney fees under Iowa Code section 600A.6B (petitioner pays).  The mother asks us to affirm the court's ruling and request this court "to adopt the standard that, like Chapter 598, the Court has broad discretion to award GAL fees in termination proceedings under Chapter 600A."[3]  She concludes "the trial court properly assumed that it had discretion in awarding said fees in this equitable proceeding and the court should affirm the trial court's ruling."[4]

---

[2] As of the August termination hearing, the guardian ad litem's fees totaled $2975. The mother made payments totaling $1500, which left a balance due of $1475.

[3] Iowa Code section 598.12(3) provides that guardian ad litem fees be charged against the party responsible for court costs unless that party is indigent.  Awards of attorney fees are reviewed for abuse of discretion.  *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).

[4] The mother

> urges the court *not* to adopt a policy which allows the trial court to assess GAL fees as court costs.  Such a policy demeans the role of the GAL and sends the message that his/her input is not as significant or important as the attorneys in the case.  No mechanism exists for a GAL to collect court costs, other than to wait for the party assessed the costs to sell real estate in Iowa.  On the other hand, a GAL can collect on a judgment for attorney fees as one would collect any other judgment.  [The mother] acknowledges that the GAL

Although sections 600A.6A and 600A.6B provide for the appointment of counsel and payment of attorney fees, and section 600A.6(2) provides for the appointment of a guardian ad litem, the statute is silent as to who is responsible for assuming the financial obligation of providing a guardian ad litem for the child.[5] The parties have directed us to no authority on point.

Can the guardian ad litem fees be taxed as court costs? A court does not have "inherent power to tax costs [including attorney fees] to the losing party in any action." *In re R.S.N.*, 706 N.W.2d 705, 708 (Iowa 2005) (quoting *Harris v. Short,* 115 N.W.2d 865, 867 (1962)). Only those costs or attorney fees authorized by statute are taxable. *Id.* Although chapter 600A does not specifically authorize taxation of guardian ad litem fees as court costs in a private termination action, Iowa Code sections 625.1 and 625.14 appear to permit guardian ad litem fees to be treated as court costs in 600A cases. Addressing the issue in *In re I.M.H.*, No. 13-0324, 2014 WL 1228376, at *1 (Iowa Ct. App. Mar. 26, 2014), we stated:

> With respect to the payment of the guardian ad litem fees, we note the mother and step-father requested the appointment of a guardian ad litem for the child at issue here. The court taxed the guardian ad litem fees against the mother and step-father as court costs. Pursuant to Iowa Code section 625.1 (2011), "Costs shall be recovered by the successful party against the losing party." It is undisputed the mother and step-father are the losing party in this case as the court dismissed their petition to terminate the rights of the biological father. Section 625.14 permits the clerk to tax "any further sum for any other matter which the court may have awarded as costs in the progress of the action, or may allow." Guardian ad litem fees have been included in costs that the court may tax as court costs under sections 625.1 and 625.14. *See Grant v. Laurie,* 533

---

should be paid for his/her services in the same manner as an attorney.

[5] On the other hand, Iowa Code section 600B.41A(8) provides "the fee of a guardian ad litem, and all court costs shall be paid by the person bringing the action to overcome paternity."

N.W.2d 563, 565 (Iowa 1995) (approving of the trial court's assessment of the guardian ad litem fees for an incarcerated defendant against the successful plaintiffs).

*See also In re B.G.S.*, No. 03-1272, 2004 WL 359528, at \*3 (Feb. 27, 2004); *In re B.C.*, No. 03-0738, 2003 WL 22900626, at \*6 (Dec. 10, 2003); *In re Marriage of Schmidt*, No. 19-0495, 2020 WL 2985459, at \*4 (Iowa Ct. App. June 3, 2020) (collecting non-600A cases permitting guardian ad litem fees to be taxed as court costs).  Seeing no reason to depart from our precedent, and noting the mother does not contest the court's allocation for payment of the fees, we conclude the juvenile court did not abuse its discretion in ordering the parties to share equally in payment of the guardian ad litem fees.

**D. Conclusion.**

Clear and convincing evidence supports a ground for termination of the father's parental rights, and termination of his rights is in the best interests of the child.  The juvenile court did not abuse its discretion in ordering the parties to share equally in payment of the guardian ad litem fees.  We affirm the juvenile court's ruling.

Costs on appeal are taxed to the father.

**AFFIRMED.**